UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARTY JOE BALDWIN,<br><br>                      Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 2:16-cv-00325-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

      Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

      On August 24, 2012, plaintiff filed applications for disability insurance and SSI benefits, alleging he became disabled beginning October 1, 2009. Dkt. 9, Administrative Record (AR), 19. Those applications were denied on initial administrative review and on reconsideration. *Id.* At a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared and testified, as did a vocational expert. AR 37-89.

ORDER - 1

In a decision dated May 27, 2014, the ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore was not disabled. AR 19-31. The Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner, which plaintiff then appealed to this Court. AR 1; 20 C.F.R. § 404.981, § 1481; Dkt. 3.

Plaintiff seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the medical opinion evidence in the record;

(2) in assessing plaintiff's manipulative limitations; and

(3) in assessing plaintiff's mental functional limitations and the side effects of his medications.

Plaintiff further argues remand is appropriate in light of additional evidence submitted to the Appeals Council. For the reasons set forth below, the Court agrees the ALJ erred in evaluating the medical opinion evidence in the record and in assessing plaintiff's manipulative limitations, and therefore finds this matter should be remanded for further administrative proceedings.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such

ORDER - 2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.  The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this

ORDER - 3

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at

ORDER - 4

830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff challenges the ALJ's following findings regarding the medical opinion evidence in the record:

> On September 15, 2009, Dr. [Elsie] Tupper[, M.D.,] opined the claimant was severely limited due to his physical impairments, unable to lift at least two pounds or stand and walk. Ex. 2F. She opined the claimant could not sit, walk, or carry anything for more than brief periods of time. She noted the claimant was unable to drive a car and is not able to lift more than 10 or 15 pounds for five minutes. Dr. Tupper opined the claimant would be limited in his ability to balance, bend, climb, crouch, kneel, pull, push, and stoop.
>
> On March 9, 2010, Dr. [Natalia] Luera[, M.D.,] opined the claimant's lower back pain caused moderate limitations in his ability to sit, stand, lift, and carry. Ex. 3F. She opined the claimant's neck pain would cause mild limitations in his ability to lift, handle, and carry. Dr. Luera opined the claimant had limitations in his ability to bend, crouch, reach, and stoop. She rated his overall work level to be sedentary.
>
> In July 2010, [Ilan] Wilde[, PAC,] opined the claimant could stand for two to three hours in an eight-hour workday and could sit for two to three hours in an eight-hour workday. Ex. 5F. He opined the claimant could like [sic] five to 10 pounds occasionally. He opined the claimant would need to change positions every 20 to 30 minutes.
>
> In August 2011, Gretchen Alsip-Volbrecht, ARNP, conducted a [state agency] psychical [sic] evaluation. Ex. 6F. She opined the claimant was really limited in his ability to work. She opined the claimant could sit about four hours a day but may need to alternate with standing. Ms. Alsip-Volbrecht opined the claimant could stand for one hour in an eight-hour workday but would need frequent breaks. She opined the claimant could lift 15 pounds occasionally and 10 pounds frequently. She opined the claimant should not do any lifting, pushing, pulling, reaching, bending, or stooping.
>
> On August 2, 2012, [Thomas] York[, PAC,] opined the claimant was able to lift up to 10 pounds and could frequently lift two pounds. Ex. 15F. He opined the claimant had postural limitations and that his work functions would be impaired for 24 months.
>
> The above opinions all limited the claimant to sedentary work. Exs. 2F; 3E; 5F; 6F; 15F. These opinions are inconsistent with the objective findings and the claimant's actual functioning. For example, the claimant was working as late as September 2010 as a drywall installer. It is not clear these providers knew of the claimant's work. However, the objective findings on examination

ORDER - 5

>are not consistent with sedentary work. In March 2013, the claimant's range of motion was only somewhat limited and there were no other markedly significant findings upon examination. Ex. 18F/13. This was consistent with earlier examinations. The claimant generally received conservative treatment injections, pain medication, and physical therapy. For example, the claimant reported that with half a Vicodin he was able to move around really well during the day. Ex. 11F/3. These opinions rely heavily on what one treating provider described as the claimant's "self-perceived disability." Ex. 4F/22. For this reason the above opinions limiting the claimant to sedentary work are given little weight.

AR 27-28. Plaintiff argues the ALJ failed to provide valid reasons for rejecting those opinions. The Court agrees.

First, it is far from clear as to exactly when plaintiff stopped working as a drywall installer. In late January 2010, he reported working "intermittently." AR 462. In late March 2010, plaintiff reported that he "currently is not working." AR 433. In mid-August 2010, plaintiff reported that "[w]hen he moved out here, he worked for a family member doing drywall work," but that he was "currently unemployed." AR 456. At the hearing, plaintiff testified that the last drywall job he did was right before he moved, and that he moved in August or September 2010. AR 70-71. Even if the September 2010 date the ALJ used is correct, the last time plaintiff worked still would have been well before the evaluations completed by Ms. Alsip-Volbrecht and Mr. York. Thus, at the very least this was not a valid basis for discounting the opinions of those two medical sources.

Second, both Dr. Tupper and Mr. York made objective clinical findings – such as pain, tenderness, and restricted range of motion – that either were contemporaneous with or prior to the dates of their evaluation reports, and that certainly could support the functional limitations they assessed. AR 401, 539. Further, objective clinical findings of a substantially similar severity are contained elsewhere in the record (AR 421, 431-33, 457-58, 464, 472, 475, 482, 497, 654), which also lend support to the medical sources' opinions, even though as the ALJ noted there are

ORDER - 6

less remarkable findings as well (AR 433, 444, 447, 457, 462-64, 482, 497, 521, 558, 654, 660, 662). The ALJ also fails to explain what he means by "markedly significant findings," or why findings of that nature are required to support the above opinions. *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony).

Third, the relief plaintiff obtained from the Vicodin he took was mixed (AR 423, 481, 534), and the conservative treatment overall that he received did not provide significant relief and was noted to have failed (AR 411, 423, 431, 482, 513). Fourth, and finally, as plaintiff points out, the ALJ appears to have misconstrued the significance of the report of plaintiff's "self-perceived disability." In late August 2010, a nurse practitioner commented: "Oswestry disability index was performed by the [plaintiff] today and shows a self-perceived disability associated with his pain of 56%, which places him in a severe, self-perceived disability." AR 457. But as described by one court:

> The Oswestry Disability Index is a questionnaire that measures lower back pain. The questionnaire involves the patient's perceived level of disability in 10 everyday activities of daily living A score between 60 to 80 percent falls into the "crippled" category and means the pain impinges on all aspects of these patients' lives—both at home and at work—and positive intervention is required.

*Mills v. Union Sec. Ins. Co.*, 832 F. Supp. 2d 587, 591 n.2 (E.D.N.C. 2011). Thus, it does not appear as the ALJ seems to have assumed and to have used to discredit plaintiff's credibility, that this index is a measure of a claimant's overall disability perception vis-à-vis his or her ability to work in general.

II.     The ALJ's Assessment of Plaintiff's Manipulative Limitations

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found

ORDER - 7

disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the RFC:

> **to perform light work . . . subject to the following limitations. The claimant can lift and or carry 20 pounds occasionally and 10 pounds frequently. He can stand or walk about six hours in an eight-hour workday and can sit about six hours in an eight-hour workday. The claimant can occasionally climb ramps or stairs and can perform work that does not require him to climb ladders, ropes, or scaffolds. He can occasionally stoop[,] kneel, crouch, or crawl. He can push and pull overhead occasionally. He can perform work that avoids concentrated exposure to extreme cold, extreme heat, and excessive humidity. The claimant can perform work that avoids concentrated exposure to pulmonary irritants such as fumes, odors, dusts, or gases, He can perform simple job tasks. He can tolerate no more than incidental interaction with the public and can perform work where interaction with the public is not a required part of job duties. The claimant can tolerate superficial interaction with coworkers.**

AR 24 (emphasis in the original). But because as discussed above the ALJ erred in evaluating the medical opinion evidence in the record, the ALJ's RFC assessment cannot be said to completely

ORDER - 8

and accurately describe all of plaintiff's functional limitations.

Plaintiff also argues the ALJ erred in failing to assess his manipulative limitations. The Court again agrees. Ms. Alsip-Volbrecht opined that plaintiff could not do any reaching, pushing, or pulling (AR 471), and Dr. Luera found plaintiff to be restricting in reaching as well (AR 412). Although the ALJ gave only little weight to the opinions of Dr. Luera and Ms. Alsip-Volbrecht, as discussed above none of the reasons the ALJ offered for doing so were valid. Thus, the ALJ also erred in failing to provide a valid basis for excluding any limitations on reaching, pushing, or pulling in plaintiff's RFC or explaining why he declined to do so.

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response

ORDER - 9

to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 30-31. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – cannot be said to be supported by substantial evidence or free of error.

IV. Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical opinion evidence, plaintiff's RFC, and his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

ORDER - 10

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 2nd day of September, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11